UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
ANTHONY HILL,                            :    15 Civ. 6256 (AT) (JCF)
                                         :
                Petitioner,              :        REPORT AND
                                         :      RECOMMENDATION
      - against -                        :
                                         :
CHRISTOPHER MILLER,                      :    ┌─────────────────────────────┐
                                         :    │ USDS SDNY                   │
                Respondent.              :    │ DOCUMENT                    │
- - - - - - - - - - - - - - - - - -:          │ ELECTRONICALLY FILED        │
TO THE HONORABLE ANALISA TORRES, U.S.D.J.:    │ DOC #: _____    │
                                              │ DATE FILED: 5/11/16         │
                                              └─────────────────────────────┘

     Anthony Hill, proceeding pro se, seeks a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.   Mr. Hill is currently serving a

fifty-year sentence after a jury convicted him of twenty-three

counts consisting of: (1) first-, second-, and third-degree rape;

(2) second- and third-degree assault; (3) first-, second-, and

third-degree sodomy;  (4) first-degree sexual abuse; and (5)

endangering the welfare of a child.   For the reasons that follow,

I recommend dismissing the petition.

Background[1]

     A.  Procedural History

     Because it is particularly relevant to the analysis below, I

begin with a discussion of the procedural history of this case.

---

[1] "T." refers to the transcript of Mr. Hill's trial;
references to "H." followed by a date (e.g. 4/22/09) denote the
transcripts of Mr. Hills pre-trial hearings; "S." refers to the
transcript of Mr. Hill's sentencing; "S.R." denotes the record of
state court proceedings following Mr. Hill's trial.

Following his arrest in March 2001 for the crimes described below, Mr. Hill was brought to trial in 2002 in New York State Supreme Court, New York County.  (Petition Under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") at 1, 6-7; H. 4/22/09 at 3).  Before the state finished its direct examination of its first witness, Mr. Hill pled guilty to the first count of the indictment "in full satisfaction of the entire indictment." (S.R. at 259-63; H. 4/22/09 at 3).  On May 14, 2002, pursuant to the plea agreement, the court imposed a term of imprisonment of fifteen years.  (S.R. at 267, 270-71; H. 4/22/09 at 3).

"Nearly two years later, in March 2004, [the petitioner] moved . . . to vacate his conviction," arguing that "his guilty plea was involuntary[] because he had not been informed that his sentence included a five-year period of post-release supervision." People v. Hill, 39 A.D.3d 1, 3, 830 N.Y.S.2d 33, 34 (1st Dep't 2007) ("Hill I").  Although the trial judge denied this motion, he attempted to rectify the situation by re-sentencing the petitioner to term of imprisonment of twelve and one-half years and a term of post-release supervision of two and one-half years, that is, a fifteen-year sentence pursuant to the original plea agreement. Id.; (H. 4/22/09 at 3-4).  The Supreme Court of New York, Appellate Division, First Department (the "Appellate Division"), affirmed

2

the trial court's decision. Hill I, 39 A.D.3d at 18, 830 N.Y.S.2d at 45. However, on November 15, 2007, the New York Court of Appeals, after concluding that Mr. Hill "did not possess the requisite information knowingly to waive his rights," reversed the Appellate Division, vacated Mr. Hill's guilty plea and "remitted [the case] to [the] Supreme Court for further proceedings on the indictment." People v. Hill, 9 N.Y.3d 189, 192-93, 849 N.Y.S.2d 13, 16, (2007) ("Hill II"). On May 12, 2008, the United States Supreme Court denied the state's petition for a writ of certiorari. New York v. Hill, 553 U.S. 1048 (2008).

The case again proceeded to trial, this time before the Honorable John Cataldo, who held a hearing on April 22, 2009, to resolve a number of pre-trial issues. First, the court considered whether, pursuant to People v. Molineux, 168 N.Y. 264 (1901), the prosecution would be allowed to introduce evidence of uncharged criminal conduct committed by Mr. Hill. (H. 4/22/09 at 15-57). Second, pursuant to People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974), the court weighed whether Mr. Hill could be cross examined on his prior criminal convictions in the event he chose to testify. (H. 4/22/09 at 58-67). Third, the court permitted the prosecution, over the petitioner's objection, to file an amended indictment that changed references to the year "1998" to "1997" in order to conform to the evidence. (H. 4/22/09 at 86-

3

87).   Thereafter,   the   court   arraigned   the   petitioner   on   the
amended indictment.  (H. 4/22/09 at 91-92).

In addition, the court considered a number of pro se motions
the petitioner had filed with the court.  (H. 4/22/09 at 6-10).
One of these motions -- a "Motion to Suppress Physical Evidence"
-- asserted that Mr. Hill's arrest and the search of his home
violated his Fourth Amendment rights because, although the police
obtained warrant, they only did so after the arrest and search and
then falsified their records to make it appear that the warrant
had been obtained first.  (H. 4/22/09 at 93, 100-01, 108-11).
According to a sworn affidavit that Mr. Hill submitted in support
of this motion, he was arrested and his home was searched late on
the night of March 15, 2001.  (H. 4/22/09 at 93, 106).   By
contrast, the state's records showed that a warrant was obtained
at around 8 p.m. on March 16 and that Mr. Hill was arrested that
same day at 11:55 p.m., after which the search proceeded.   (H.
4/23/09 at 5).   Although Mr. Hill filed this motion pro se, his
trial attorney, Bryan Konoski, adopted the motion and argued that
the court should "order the prosecution to turn everything over so
that we could take a look at time and date stamps to compare them."
(H. 4/22/09 at 93, 101).   While the judge denied the motion as
untimely, he agreed to "revisit" the issue if the prosecution's
records  --  which  the  prosecutor  agreed  to  turn  over  --

4

"demonstrate[ed] that [the petitioner's account] may be accurate." (H. 4/22/09 at 109-12).  Subsequently, after the court and defense counsel reviewed the records the prosecution produced, the judge again denied the motion as untimely and further ruled that it "[was] substantive[ly] inadequate" and that the warrant "was supported by probable cause."  (H. 4/23/09 at 2-6).  At the petitioner's insistence, Mr. Konoski requested that the state "be ordered to produce" a time and date stamp reflecting when the petitioner was fingerprinted; the court also denied that request. (H. 4/23/09 at 27-28).

The petitioner also filed a "Motion to Dismiss the Indictment" pursuant to the New York Criminal Procedure Law ("CPL") § 30.30 (H. 4/22/09 at 95), which provides that a motion to dismiss an indictment must be granted "where the people are not ready for trial" within a specified time period, N.Y. Crim. Proc. Law § 30.30(1).  Mr. Konoski declined to adopt the motion, explaining that he had consented to adjournments and believed "that there really wasn't too much time at all that should be chargeable" to the prosecution.  (H. 4/22/09 at 95-96).  In fact, after reviewing his own records, Mr. Konoski explained that, except for the period when the petition for certiorari was pending, he was responsible for every adjournment that preceded the trial.  (H. 4/23/09 at 22-25).  By contrast, Mr. Hill argued that he did not consent to the

5

adjournments and that every day since the Court of Appeals vacated his guilty plea should be charged to the prosecution.   (H. 4/22/09 at 96).   The court denied the motion.   (H. 4/22/09 at 98).

A jury was sworn in on April 24, 2009 (H. 4/24/09 at 1, 109), and the trial began on April 27 (T. at 1).   As the trial neared its end, the petitioner requested that the jury be instructed that "if [it] finds that [] intoxication affected [the petitioner's] ability to form the necessary state of mind to have committed the act alleged[,] they can consider that in their deliberations."   (T. at 504-05, 526-39).   The judge denied the request.   (T. at 528).

The jury found the petitioner guilty of all twenty-three counts.   (T. at 718-26).   On May 29, 2009, Justice Cataldo sentenced Mr. Hill to an aggregate term of imprisonment of 185 5/6 years, though that sentence is "capped at 50 years by operation of law."   People v. Hill, 121 A.D.3d 469, 469-70, 994 N.Y.S.2d 97, 98-99 (1st Dep't 2014) ("Hill III"); (S. at 34-38); New York Penal Law § 70.30(1)(e)(vi) (capping terms of imprisonment at fifty years in certain situations).

The petitioner appealed his conviction to the Appellate Division.   Through counsel, he argued that: (1) the trial court's Molineux ruling was improper; (2) the trial court's Sandoval ruling prevented him from testifying; (3) it was error not to give the

6

jury the requested intoxication charge; (4) the state's witness was improperly allowed to give testimony that was speculative, irrelevant, and prejudicial; (5) the trial court failed to inquire into the potential bias of a juror; and (6) the trial court imposed an excessive sentence. (S.R. at 2-3). In addition, the petitioner filed a supplemental brief pro se contending that: (1) his arrest and the search of his home violated his Fourth Amendment rights; (2) his trial and appellate counsel were ineffective; (3) his re-trial and conviction violated the Fifth Amendment's Double Jeopardy Clause; and (4) the trial court violated his state and federal speedy trial rights. (S.R. at 82-83).

The Appellate Division unanimously affirmed the trial court's judgment. Hill III, 121 A.D.3d at 469, 994 N.Y.S.2d at 98. Regarding the constitutional dimension of the petitioner's challenges to the trial court's evidentiary rulings, the Appellate Division determined that the claims were unpreserved and, in the alternative, "not of constitutional dimension" and meritless. Id. at 469, 98-99. The Appellate Division found that the petitioner's intoxication charge and juror bias claims were unpreserved and also denied them on their merits. Id. at 469-70, 99. Finally, the court "perceive[d] no basis for reducing the sentence" and "considered and rejected [the petitioner's] pro se claims." Id. at 470, 99. The Court of Appeals denied the petitioner's

application for leave to appeal the Appellate Division's ruling on June 24, 2015. (S.R. at 301). Mr. Hill filed this petition on August 7, 2015.

B. The Criminal Activity

The factual basis underlying Mr. Hill's conviction is largely not at issue in this petition. Accordingly, I provide only a very brief summary of the evidence introduced at trial.

In 1994, when she was nine years old, T.H., Mr. Hill's daughter, was living with her mother in Florida.[2] (T. at 27-28, 30, 34). That summer, she flew to New York with her half-sister to stay with Mr. Hill for what she believed would be a brief visit. (T. at 34-35). However, as the end of the summer approached, T.H.'s mother encouraged her to stay in New York with Mr. Hill, suggesting she would have "a better life" there. (T. at 35). T.H. stayed in New York while her half-sister returned to Florida. (T. at 36).

Around September 1994, Mr. Hill and T.H. moved to an apartment in Manhattan that they shared with two women; the two women slept in one room while Mr. Hill and T.H. slept in the other. (T. at

---

[2] Pursuant to New York Civil Rights Law § 50-b, the respondent has referred to the state's witness by her initials "T.H." to keep her identity confidential. (Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Memo.") at 1 n.1). I will do the same.

8

39-41).   One night, T.H. fell asleep while watching television beside her father; when she awoke, Mr. Hill was on top of her holding her hands together with one hand and her legs apart with the other and forcing his penis into her vagina.  (T. at 57-58). Mr. Hill again raped T.H. "[a] few days later" and continued to do so "[s]everal times a week" for several years.  (T. at 62-63). T.H. also testified that Mr. Hill hit her using his fists, wires, a belt, and a wooden stick.  (T. at 87).  On one occasion, he hit her in the face with a wooden stick, causing a black eye that lasted a week.  (T. at 159-160, 162-63).

The sexual abuse persisted past T.H.'s fifteenth birthday. (T. at 170-72, 213-14).  On March 15, 2001, T.H. spent the night with her aunt, Tami Washington.  (T. at 146-48, 358-59).  The next morning, T.H. told her aunt about the abuse.  (T. at 148-49, 360-61).  Ms. Washington then called her sister, who reported the abuse to the police.  (T. at 362).  Detective John Savino, after interviewing T.H. on March 16, obtained a search warrant, arrested Mr. Hill at his home, and searched his apartment.  (T. at 375-81, 392).  T.H. moved in with her aunt and uncle in New Jersey.  (T. at 53).

Discussion

In his habeas petition,[3] Mr. Hill contends that: (1) the trial court improperly admitted evidence obtained in violation of the Fourth Amendment (Pet. at 6-7); (2) his re-trial and conviction violated his right against double jeopardy (Pet. at 7-8); (3) the trial court violated his constitutional right to a speedy trial (Pet. at 8-9); (4) the trial court "abused its authority" by re-trying him rather than releasing him after the Court of Appeals vacated his guilty plea (Pet. at 9); (5) the trial court improperly denied his pro se suppression motion (Pet. at 9); (6) his trial and appellate counsel provided ineffective assistance in violation of the Sixth Amendment (Pet. at 10); (7) the trial court's Molineux ruling deprived him of a fair trial (Supp. Pet. at 3-4); (8) the trial court's Sandoval ruling prevented him from testifying (Supp. Pet. at 4); (9) a prosecution witness was improperly allowed to give opinion testimony and testimony that was irrelevant and highly prejudicial (Supp. Pet. at 4-5); (10) he was entitled to have the jury given an "intoxication" charge (Supp. Pet. at 5); (11) he was deprived of his right to an impartial jury (Supp. Pet. at 5-6); and (12) his sentence is excessive, as he was improperly penalized

---

[3] On November 23, 2015, I granted Mr. Hill leave to file a supplemental petition (Memo Endorsement dated Nov. 23, 2015), which he submitted on December 12, 2015 (Supplemental [sic] to Petition to Habeas Corpus ("Supp. Pet.")).

for exercising his right to go to trial (Supp. Pet. at 6).

    A.  <u>Fourth Amendment Claims</u>

Mr. Hill argues that his arrest and the subsequent search of his home violated his Fourth Amendment rights because the police lacked a warrant.[4]  It was only after his arrest, he asserts, that police went before a judge and obtained a warrant, at which point they "changed the date[s] on all further related documents to conform to the date of the judge[']s signature of the search warrant." (Pet. at 6-7).

As a general rule, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976) (footnotes omitted); <u>see</u> <u>Graham v.</u>

_____

[4] Elsewhere in his petition, Mr. Hill requests relief on the ground that the state court violated his constitutional rights when it denied his suppression motion as untimely.  (Pet. at 9). To the extent this claim is not duplicative of the Fourth Amendment claim, review of the trial court's ruling is barred.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred . . . ."); <u>see also</u> <u>Shaw v. Scully</u>, 654 F. Supp. 859, 864 n.5 (S.D.N.Y. 1987) ("Failure to make a timely Fourth Amendment objection under the available state process operates as a procedural bar under <u>Wainwright v. Skyes</u>, 433 U.S. 72 (1977) . . . .").

Costello, 299 F.3d 129, 133-34 (2d Cir. 2002).  However, habeas relief remains available if the state failed to provide "corrective procedures" to redress the Fourth Amendment violation or if the state provided such process but the petitioner was precluded from utilizing it by reason of "an unconscionable breakdown" in that process.  Cappellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992); Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc).

The petitioner cannot contend that New York failed to provide a corrective procedure, "as 'the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in [the CPL], as being facially adequate.'"  Neal v. Yelich, No. 12 Civ. 3022, 2012 WL 6097659, at *2 (S.D.N.Y. Dec. 7, 2012) (quoting Cappellan, 975 F.2d at 70 n.1); see also Daily v. New York, 388 F. Supp. 2d 238, 249 (S.D.N.Y. 2005).  Furthermore, there is nothing in the record that establishes an "unconscionable breakdown" in the process afforded to the petitioner.  As of April 22, 2009, the day before jury selection began, the petitioner had only "recently" filed a pro se suppression motion (which his trial counsel subsequently adopted) that raised the Fourth Amendment claim.  (H. 4/22/09 at 6-7, 93).  In support of the motion, he submitted a sworn affidavit as to the timeline of his arrest.  (H. 4/22/09 at 93).  After affording both the prosecutor and Mr. Konoski an opportunity to be heard, the judge denied the motion as

12

untimely but stated that he would revisit the issue after reviewing records the prosecution agreed to provide that belied the petitioner's assertions. (H. 4/22/09 at 100-13). After hearing further argument and reviewing the prosecution's submissions the next day, the judge found that a warrant supported by probable cause was obtained prior to the arrest and search and denied the petitioner's motion on the grounds that (1) it was untimely and (2) that it was "substantive[ly] inadequate." (H. 4/23/09 at 2-5). The Appellate Division rejected the petitioner's argument on this issue. Hill III, 121 A.D.3d at 470, 994 N.Y.S.2d at 99.

The petitioner argues that his motion was in fact timely and, therefore, the failure to conduct a hearing pursuant to Mapp v. Ohio, 367 U.S. 643 (1961), constitutes an unconscionable breakdown in the state's corrective procedure. (Reply to the Respondent's Opposition to Petitioner's Writ of Habeas Corpus ("Reply") at 6-11). The CPL provides that pre-trial suppression motions must be filed within forty-five days of arraignment unless the motion is "based upon grounds of which the defendant could not, with due diligence, have been previously aware." CPL § 255.20(1), (3); see also CPL § 710.40(1) (incorporating § 255.20 for suppression motions). There is no dispute that the petitioner was arraigned shortly after his arrest in 2001 (S.R. at 86), and the petitioner does not argue that, prior to filing his motion in April 2009, he

13

lacked awareness of the alleged discrepancy between the date of his arrest and the issuance of the warrant.   Moreover, the prosecution provided the trial court with a copy of an omnibus motion the defendant filed in 2001 requesting, among other things, the suppression of physical evidence.   (H. 4/23/09 at 3).

The petitioner's principal contention is that, because he was re-arraigned on the amended indictment on April 22, 2009 (H. 4/22/09 at 91-92), he had forty-five days from that date to make his suppression motion.   The argument lacks merit.   First, the petitioner has not cited, and I have not found, any authority that supports his position.   Cf. People v. Sturgis, 112 A.D.2d 757, 757-58, 492 N.Y.S.2d 257, 258 (4th Dep't 1985) (finding no abuse of discretion where trial court denied as untimely suppression motion "made for the first time two weeks before [defendant's] second trial" based upon facts known to defendant several years earlier).   Second, adopting this argument would subvert the purpose underlying the CPL's time limits.   See People v. Davidson, 98 N.Y.2d 738, 739, 751 N.Y.S.2d 161, 162 (2002) ("The time restrictions fixed by CPL [§] 255.20 are not casual.   Rather, the deadlines imposed by the statute rest on 'the strong public policy to further orderly trial procedures and preserves scarce trial resources.'" (quoting People v. Jennings, 69 N.Y.2d 103, 113, 512 N.Y.S.2d 652, 656 (1986))); People v. Lawrence, 64 N.Y.2d 200,

14

204-05, 485 N.Y.S.2d 233, 236 (1984) ("The Legislature's purpose in enacting CPL [§] 255.20 was to regulate pre-trial proceedings by requiring a single omnibus motion to be made promptly after arraignment and thus to avoid . . . prior procedure in which a defendant could bombard the courts and Judges with dilatory tactics continuing right up to the eve of trial." (internal citation omitted)).  Third, the amendments to the indictment, which changed references to the year 1997 to 1998 (H. 4/22/09 at 86), had no bearing on the petitioner's claim.  Fourth, the provision of the CPL that governs amendments to an indictment did not even require that the petitioner be re-arraigned following the amendment.  CPL § 200.70(1).

In short, the petitioner has failed to establish an "unconscionable breakdown" in the state's corrective process.  See Cimino v. Conway, No. 08-CV-6318, 2011 WL 815677, at *9 (W.D.N.Y. March 2, 2011) (declining to reach Fourth Amendment claim where suppression motion was denied as untimely "even if th[e] Court were to disagree with the state court's decision"); see also Capellan, 975 F.2d at 71 (requiring habeas court to consider only "the existence and application of the corrective procedures themselves" (emphasis omitted)); Shaw, 654 F. Supp. at 864 n.5 (S.D.N.Y. 1987) ("Petitioner need not have actually litigated a Fourth Amendment claim to be barred by Stone.").  Accordingly,

15

federal habeas relief may not be granted based on the alleged Fourth Amendment violation.

    B.   <u>Exhaustion and Procedural Default</u>

A habeas petitioner must exhaust all available state remedies for each claim prior to seeking federal review.   28 U.S.C. § 2254(b)(1)(A); <u>Duckworth v. Serrano</u>, 454 U.S. 1, 3 (1981).   For a claim to be exhausted, a petitioner must utilize "all available mechanisms to secure appellate review of the denial of that claim." <u>Klein v. Harris</u>, 667 F.2d 274, 282 (2d Cir. 1981).   That requires that the petitioner have "invok[ed] one complete round of the State's established appellate review process."   <u>Galdamez v. Keane</u>, 394 F.3d 68, 73 (2d Cir. 2005) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999)).   In general, to exhaust a claim properly in New York, the petitioner must first "fairly present[]" it to the Appellate Division, and then "must seek further review . . . by applying to the Court of Appeals for a certificate granting leave to appeal."   <u>Galdamez</u>, 394 F.3d at 73-74 (emphasis omitted) (quoting <u>O'Sullivan</u>, 526 U.S. at 848).

Furthermore, if a petitioner "at some point . . . had th[e] right [to raise a claim before the state's highest court] but failed to exercise it," the claim will be deemed exhausted but procedurally defaulted if the petitioner "no longer possess[es] 'the right under the law of the State to raise . . . the question

presented.'" <u>Galdamez</u>, 394 F.3d at 74 (quoting 28 U.S.C. § 2254(c)); <u>see also</u> <u>Richardson v. Superintendent of Mid-Orange Correctional Facility</u>, 621 F.3d 196, 201 (2d Cir. 2010) ("When a petitioner can no longer 'present his unexhausted claim of trial error to the state courts, we deem the claim procedurally barred.'" (quoting <u>Acosta v. Artuz</u>, 575 F.3d 177, 188 (2d Cir. 2009))). The merits of a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner shows cause for the default and actual prejudice resulting from it, or that failure to consider the defaulted claim would result in a "fundamental miscarriage of justice" because "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986) (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 135 (1982)).

      1.  <u>Speedy Trial Claim</u>

According to the respondent, the petitioner's constitutional speedy trial claim should be deemed exhausted but procedurally defaulted because, although he argued on appeal that his speedy trial rights under New York law were violated, he "failed to raise his claim in a manner sufficient to alert the state court to a federal issue." (Resp. Memo. at 22). The petitioner contends that he sufficiently alerted the state courts to the federal nature of his speedy trial claim, pointing out that, among other things,

he cited the Sixth Amendment.  (Reply at 14-15).  While it is true
that the petitioner's legal analysis was framed mostly in terms of
New York law, "[c]iting a specific constitutional provision . . .
alerts state courts of the nature of the claim." Jones v. Vacco,
126 F.3d 408, 413-14 (2d Cir. 1997).   The petitioner's speedy
trial claim was, therefore, properly exhausted and should be
reviewed on the merits.

2.   Ineffective Assistance of Appellate Counsel

The petitioner asserts that his appellate counsel was
ineffective for failing to raise the double jeopardy, speedy trial,
and Fourth Amendment issues on direct appeal. (Petition at 10).
This claim, the respondent argues, is unexhausted.  (Resp. Memo.
at 25).

"Under New York law, the remedy for claims of ineffective
assistance of appellate counsel is a petition for a writ of error
coram nobis. . . .   Thus, claims for ineffective assistance of
appellate counsel are considered exhausted upon the filing and
consideration of a [coram nobis] petition . . . ." Garcia v.
Keane, 973 F. Supp. 364, 369-70 (S.D.N.Y. 1997).  There is no time
limit for filing a coram nobis petition.  Cowan v. Artuz, 96 F.
Supp. 2d 298, 304 (S.D.N.Y. 2000).

The respondent asserts -- and the petitioner does not deny --
that no coram nobis petition was ever filed in this matter.

Therefore, the claim of ineffective assistance of appellate counsel is unexhausted. Where an unexhausted claim may still be raised in state court, a district court may (1) stay the habeas petition so that the petitioner may raise his claim in state court or (2) "take jurisdiction over the claim for the sole purpose of dismissing it." Quail v. Farrell, 550 F. Supp. 2d 470, 476 (S.D.N.Y. 2008). However, staying a petition "for a plainly meritless claim constitutes an abuse of discretion." Id. As I explain below, the petitioner's claims regarding appellate counsel's performance lack merit and should, therefore, be dismissed.

3.   Ineffective Assistance of Trial Counsel

The petitioner argues that his trial counsel was similarly ineffective for his handling of the double jeopardy, speedy trial, and Fourth Amendment issues. (Petition at 10). However, on direct appeal, the petitioner addressed only trial counsel's failure to assert the double jeopardy defense and never argued ineffectiveness based on the speedy trial and Fourth Amendment issues. According to the respondent, the Court should therefore deem all but the double jeopardy prong of petitioner's claim exhausted but procedurally defaulted. (Resp. Memo. at 25).

The respondent's argument assumes that the petitioner can no longer obtain redress in state court based on these claims. On

19

the one hand, "[i]f the basis for an ineffective assistance claim is contained in the [trial] record and the petitioners fails to raise it on direct appeal, he has procedurally defaulted." Perez v. Greiner, No. 02 Civ. 1436, 2003 WL 22427759, at *6 (S.D.N.Y. Oct. 23, 2003). However, CPL § 440.10 "provide[s] a method by which individuals can collaterally attack their convictions even after they have used up their one direct appeal." Cruz v. Berbary, 456 F. Supp. 2d 410, 414 (W.D.N.Y. 2006). And while a motion pursuant to § 440.10 may be initiated at any time after the entry of judgment, Mingo v. Ercole, No. 08 CV 4818, 2010 WL 4941483, at *8 (E.D.N.Y. Nov. 30, 2010), such a motion must be denied where "the movant unjustifiably failed to raise the constitutional violation on direct appeal despite a sufficient record to have permitted such an appeal," Cruz, 456 F. Supp. 2d at 414; see, e.g., People v. Salgado, 128 A.D.3d 595, 595, 10 N.Y.S.3d 67, 67 (1st Dep't 2015) (affirming denial of 440.10 motion on ground that ineffective assistance of counsel claim not raised on direct appeal); People v. Carter, 105 A.D.3d 1149, 1150, 963 N.Y.S.2d 419, 421-22 (3d Dep't 2013) (same); cf. People v. Peque, 22 N.Y.3d 168, 202, 980 N.Y.S.2d 280, 304 (2013) ("Where a defendant's complaint about counsel is predicated on factors . . . that do not appear on the face of the record, the defendant must raise his or her claim via a CPL 440.10 motion."). Thus, whether Mr. Hill's

claims are procedurally defaulted depends on whether the trial record was sufficient for the appellate courts to review the issues he now raises.

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show (1) that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, the defendant must prove that his "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (internal citation omitted) (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). To show that the deficient performance prejudiced the outcome, the defendant must establish

that the "likelihood of a different result [is] substantial, not just conceivable."   Harrington v. Richter, 562 U.S. 86, 112 (2011).

The Supreme Court has counseled that these principles "do not establish mechanical rules."   Strickland, 466 U.S. at 696.   The focus of the inquiry should be on the fundamental fairness of the trial and whether, "despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown of the adversarial process."   Id.   Any errors of counsel must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'" Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 695-96).

I agree that the petitioner's claim regarding trial counsel's handling of the speedy trial issue is procedurally barred. Because the trial court developed a clear record of the case's timeline and the reasons for the delay in bringing the case to trial (H. 4/22/09 at 95-98; H. 4/23/09 at 22-26), the petitioner's failure to challenge counsel's performance on this basis on direct appeal bars him from raising the issue in a 440.10 motion.

As for trial counsel's handling of the Fourth Amendment issue, the petitioner's argument seems to be that counsel was ineffective

for (1) failing to raise the claim and (2) failing to properly
investigate the underlying facts. (Reply at 36, 42). Again,
because the trial record is sufficient to resolve each of these
claims, I agree that they are procedurally defaulted. Regarding
Mr. Hill's first contention, the trial record clearly shows that
counsel not only adopted the petitioner's pro se suppression
motion, but also argued the issue at length. (H. 4/22/09 at 93-
95, 100-13; H. 4/23/09 at 2-5, 27-28). And while the record does
not contain information about trial counsel's alleged failure to
investigate the basis for the petitioner's suppression argument,
it is sufficient to show that no further investigation was
warranted.

"[C]ounsel has a duty to make reasonable investigations or to
make a reasonable decision that makes particular investigations
unnecessary." Strickland, 466 U.S. at 691. However, this duty,
the Supreme Court has recognized, "does not force defense lawyers
to scour the globe on the off chance something will turn up;
reasonably diligent counsel may draw a line when they have good
reason to think further investigation would be a waste." Rompilla
v. Beard, 545 U.S. 374, 382-83 (2005).

Here, the record shows that the petitioner did not inform Mr.
Konoski of Fourth Amendment issue prior to filing his pro se

23

suppression motion. (H. 4/22/09 (Justice Allen)[5] at 4; H. 4/22/09
at 6-7); see Batchilly v. Nance, No. 08 Civ. 7150, 2010 WL 1253921,
at *37 (S.D.N.Y. April 2, 2010) (denying claim that counsel was
ineffective for failure to investigate alibi defense where
petitioner failed to "communicate and cooperate with defense
counsel" and collecting cases), report and recommendation adopted,
2011 WL 1226260 (S.D.N.Y. March 30, 2011); Collins v. Conway, No.
04 Civ. 4672, 2006 WL 1114053, at *4 (S.D.N.Y. April 26, 2006)
("Petitioner's [ineffective assistance of counsel] claims are
entirely dependent on information that the Petitioner himself had
at every stage of the proceedings . . . . Any failure to assert
these claims . . . is therefore a failure of Petitioner not to
communicate with his counsel, not a failure of counsel."). 
Moreover, even after the prosecution turned over its records, the
only evidence that supported the petitioner's claim was his own
affidavit concerning events that had occurred more than eight years
earlier. (H. 4/23/09 at 2-5). This statement and the
petitioner's speculation that further investigation might uncover
corroborating evidence (H. 4/23/09 at 27-28) are not enough to

---

[5] On April 22, 2009, before the case was assigned to Justice
Cataldo's courtroom, the Honorable Bruce Allen, Justice of the
Supreme Court of New York, New York County, conducted a brief
hearing. The transcript of this hearing appears in the record
immediately before the hearing denoted here as "H. 4/22/09."

prompt a reasonable attorney to look further into the claim.   Even now, the petitioner has not come forward with any compelling argument as to what additional evidence might have been discovered and presented to the trial court in support of the suppression motion.   As such, even if counsel should have looked further into this issue, the petitioner cannot establish the second Strickland requirement because there is no reason to believe that his efforts could have changed the trial court's ruling.

In sum, the trial record conclusively shows that further investigation by trial counsel of the petitioner's Fourth Amendment claim was unwarranted; this claim could have been adjudicated on direct appeal and is now procedurally defaulted.[6] Because Mr. Hill has also failed to present a valid legal basis to overcome this bar,[7] the Court can only reach the merits of the

---

[6] As this discussion makes clear, even if the Court did not deem the petitioner's claim exhausted but procedurally defaulted, remand would be inappropriate because the claim is clearly meritless.

[7] As explained above, a court may reach the merits of a procedurally defaulted claim only if the petitioner establishes (1) cause for the default and actual prejudice or (2) that the complained of constitutional violation has resulted in the conviction of an individual who is actually innocent.   Murray, 477 U.S. at 495-96.   The petitioner has, for the most part, failed to respond in any way to the respondent's contention that many of his claims are procedurally defaulted.   With the exception of the speedy trial claim (which I agree is not defaulted), he has made no showing of actual innocence or that there is cause for defaulting his claims.

petitioner's claim that counsel was ineffective for not raising the double jeopardy defense.   His other claims concerning trial counsel's performance should be dismissed.

### 4.   Excessive Sentence Claim

Mr. Hill asserts that his sentence "is excessive and should be reduced." (Supp. Pet. at 6).  To the extent this claim raises a federal issue, the respondent argues it should be deemed exhausted but procedurally defaulted.  (Resp. Memo. at 47-48).  I agree, although for a slightly different reason.

Whether or not the petitioner sufficiently alerted the Appellate Division of the federal nature of his excessive sentence claim,[8] he abandoned the claim in seeking leave to appeal the

---

[8] There are several "ways in which a petitioner may alert the state court to the constitutional nature of a claim without referring chapter and verse to the U.S. Constitution." Ramirez v. Attorney General of the State of New York, 280 F.3d 87, 95 (2d Cir. 2001).  These include:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney General of New York, 696 F.2d 186, 194 (2d Cir. 1982).  Because "argu[ing] that his sentence was 'excessive[]' [] 'ipso facto calls to mind the Eighth Amendment,'" Diaz v. LeFevre, 688 F. Supp. 945, 947 (S.D.N.Y. 1988) (quoting Purnell v. Smith, No. 85 Civ. 3998, 1986 WL 9796, at *3 (S.D.N.Y. Sept. 4, 1986)),

Appellate Division's ruling to the Court of Appeals.  "Generally
'[the Second Circuit] assume[s] that the Court of Appeals would
construe a petitioner's leave application as abandoning claims
that the petitioner had pressed to the Appellate Division below'
where those claims were not presented to the New York high court
for review."  Smith v. Duncan, 411 F.3d 340, 345 (2d Cir. 2005)
(quoting Galdamez, 394 F.3d at 74).  In the present case, both the
petitioner's counseled leave application and his pro se submission
identified discrete issues for which leave to appeal should be
granted but failed to mention the excessive sentence claim.  (S.R.
278-83, 287-95); see Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)
(deeming petitioner's claims exhausted but procedurally defaulted
where "letter application requested that the Court of Appeals
review only" one of three claims presented to Appellate Division
and "made no mention" of the other two).  And although the
petitioner's lower court briefs were filed with the Court of
Appeals, the leave applications never asked the Court of Appeals
to review every issue raised in those briefs.  Cf. Jordan v.

_____

and because the petitioner cited one state court decision that
relies on constitutional analysis to address a similar fact
situation (S.R. at 69 (citing People v. Patterson, 106 A.D.2d 520,
483 N.Y.S.2d 55 (2d Dep't 1984))), one could plausibly argue that
Mr. Hill adequately alerted the Appellate Division to the
constitutional nature of his claim.  However, I need not reach
this issue.

Lefevre, 206 F.3d 196, 198 (2d Cir. 2000) ("Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims."); Morgan v. Bennett, 204 F.3d 360, 370-71 (2d Cir. 2000) (finding claim properly exhausted where petitioner submitted Appellate Division briefs to Court of Appeals and asked it to "review all issues outlined" in those briefs).  Having failed to identify in any way the excessive sentence issue as a basis for reviewing the Appellate Division's decision, this claim should be deemed exhausted but procedurally defaulted.  Grey, 933 F.2d at 120-21.

     5.   Jury Charge Claim

     Without citing any constitutional provision, the petitioner argues that he "was entitled to an intoxication charge with regard to the specific intent offenses submitted to the jury."  (Supp. Pet. at 5).  To the extent this claim presents a cognizable federal issue, cf. Cupp v. Naughten, 414 U.S. 141, 147 (1973) (noting that jury instruction may violate due process if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process"), it should be deemed exhausted but procedurally defaulted.  As explained above, to exhaust this claim, the petitioner was required to fairly present it to the Appellate Division.  Galdamez, 394 F.3d at 73-74.  Although the

28

petitioner challenged the trial court's refusal to give the requested charge on direct appeal (S.R. at 56-60), he failed to alert the state court to the federal dimension of his claim.

The petitioner did not employ any of the various ways to alert a state court to a federal claim. See Daye, 696 F.2d at 194. First, Mr. Hill neither cited a particular constitutional provision nor relied on federal precedent in presenting his claim to the Appellate Division. See Jones, 126 F.3d at 413-14. Second, of the many state court decisions the petitioner cited, not one discussed the failure to give an intoxication charge in constitutional terms. Third, the petitioner's argument on appeal did not call to mind a specific constitutional protection; he argued exclusively that the failure to give the instruction was at odds with state court precedent. (S.R. at 56-60). Finally, he did not allege a "pattern of facts that is well within the mainstream of constitutional litigation." Daye, 696 F.2d at 194. For one thing, the propriety of a jury charge in state court is "normally a matter of state law." United States ex rel. Smith v. Montanye, 505 F.2d 1355, 1359 (2d Cir. 1974). Moreover, the Supreme Court has "defined the category of infractions that violate" the Due Process Clause "very narrowly," Dowling v. United States, 493 U.S. 342, 352 (1990), and observed that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial

than a misstatement of the law," <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977).

In sum, there is no basis in the record to assume that the state court was alerted to a constitutional issue with regard to the jury charge claim.

### 6.  <u>Impeachment Evidence</u>

The petitioner challenges the trial court's ruling allowing the prosecution to cross-examine him regarding his prior criminal convictions pursuant to <u>Sandoval</u>, 34 N.Y.2d at 374-75, 357 N.Y.S.2d at 853-54, arguing that the trial court "effectively prevented him from testifying."  (Supp. Pet. at 4).  However, because the petitioner did not testify at trial (T. at 574-75), the Court is barred from considering whether the trial court's ruling was improper.

"[I]t is well established that when a defendant does not testify, a court does not have an 'adequate non-speculative basis upon which to assess the merits of [his] claim,' and, therefore, the reviewing court is procedurally barred from considering a challenge to the trial court's ruling." <u>Herrera v. Artuz</u>, 171 F. Supp. 2d 146, 150 (S.D.N.Y. 2001) (quoting <u>Peterson v. LeFevre</u>, 753 F. Supp. 518, 521 (S.D.N.Y. 1991)); <u>see also</u> <u>Luce v. United States</u>, 469 U.S. 38, 43 (1984) ("We hold that to raise and preserve for review the claim of improper impeachment with a prior

conviction, a defendant must testify.").

7.   Contemporaneous Objection Rule

The petitioner argues that the trial court erroneously ruled on two evidentiary issues and thereby violated his constitutional right to due process.  Specifically, he challenges the following rulings: (1) allowing the admission pursuant to Molineux of evidence of uncharged criminal conduct committed by the petitioner; and (2) permitting the complaining witness to "offer her opinion regarding [the petitioner's] intent" and testify as to "personal difficulties she was experiencing".  (Supp. Pet. at 3-5).  The petitioner also asserts that he was "deprived of his right to an impartial jury" when the trial court "failed to conduct its own inquiry of a seated juror after learning that the juror had a pre-existing relationship" with a prosecutor who previously handled the case.  (Supp. Pet. at 5-6).

With regard to these claims, the respondent argues that the Court cannot consider them because the Appellate Division ruled that they were unreviewable under state law since the petitioner failed to object properly to the trial court's rulings.  (Resp. Memo. at 28-29, 41).  Indeed, federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment."  Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003)

(quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)).  A state procedural bar qualifies as an "independent and adequate" state law ground if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  <u>Levine v. Commissioner of Correctional Services</u>, 44 F.3d 121, 126 (2d Cir. 1995) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989)).  A state procedural rule is generally adequate to preclude habeas review if it is "firmly established and regularly followed."  <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002) (quoting <u>James v. Kentucky</u>, 466 U.S. 341, 348 (1984)).

According to New York's contemporaneous objection rule, codified at CPL § 470.05(2), "points which were not raised at trial may not be considered for the first time on appeal."  <u>People v. Thomas</u>, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584, 586 (1980); <u>see Downs v. Lape</u>, 657 F.3d 97, 102-03 (2d Cir. 2011).  "A general objection is not sufficient to preserve an issue" for appeal; instead, "[the] defendant must specifically focus on the alleged error."  <u>Garvey v. Duncan</u>, 485 F.3d 709, 714-15 (2d Cir. 2007) (collecting state authority).  "It is well settled that failure to object at trial when required by New York's contemporaneous objection rule is an adequate and independent bar to federal habeas review."  <u>Liggan v. Senkowski</u>, No. 11 Civ. 1951, 2013 WL 3853401, at *19 (S.D.N.Y. July 26, 2013) (internal citation omitted) (collecting cases),

<u>report and recommendation adopted in relevant part</u>, 2014 WL 5315029 (S.D.N.Y. Oct. 17, 2014).

"Although [CPL] § 470.05(2) is a firmly established and regularly followed New York procedural rule, it will not bar . . . reviewing [a] federal claim on the merits if the application of that state rule to this case is exorbitant." <u>Garvey</u>, 485 F.3d at 718 (citing <u>Lee</u>, 534 U.S. at 376). The Second Circuit has identified three guideposts for evaluating the reasonableness of a state's application of a procedural bar:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

<u>Cotto</u>, 331 F.3d at 240 (citing <u>Lee</u>, 534 U.S. at 381-85).

The petitioner has not disputed that he failed to object properly to the rulings in question. With regard to the biased juror claim, after the prosecution brought the issue to the trial court's attention, and after the court ruled that it was "[f]ine," the petitioner raised no objection; in fact, apart from this brief colloquy, it appears that the issue never resurfaced until the petitioner raised in on direct appeal. (T. at 9-10). As for the

evidentiary rulings, although the petitioner objected to the evidence both during the pre-trial hearings and when it came in at trial, his objections never invoked a specific constitutional provision or engaged in the constitutional analysis he presented on appeal. (H. 4/22/09 at 37-53; T. at 85, 91, 95-97, 160-61, 220-21, 370-74)

Turning to the first Cotto factor, "[i]t is [] meaningless to ask" whether the petitioner's failure to raise a specific issue before the trial court "was actually relied on in the trial court -- the violation only first occurred when [the petitioner] raised an argument on appeal that he had not raised earlier." Garvey, 485 F.3d at 719. Moreover, had the petitioner objected to allowing the juror to remain on the jury or framed his objections to the admission of certain evidence in the constitutional terms he raised on appeal, the trial court would have had the opportunity to consider and rule on these issues. Id. (finding that raising specific issue "would have had an impact on the trial court's decision" because it "would have had the opportunity to consider" the constitutional issue); see also Cotto, 331 F.3d at 243 ("[T]he purpose of the contemporaneous objection rule is to give the trial court a clear opportunity to correct any error."). This factor does not weigh strongly in the petitioner's favor. Cotto, 331 F.3d at 243.

The second factor weighs strongly against the petitioner. Claims that a juror is unqualified to serve must be addressed to the trial court to be preserved for appellate review. People v. Mejias, 21 N.Y.3d 73, 78-79, 966 N.Y.S.2d 764, 767 (2013). Moreover, New York courts clearly deem "general" objections inadequate and instead require that the specific argument raised on appeal be first presented to the trial court. See, e.g., People v. Carncross, 14 N.Y.3d 319, 324-25, 901 N.Y.S.2d 112, 114-15 (2010); People v. Harris, 98 N.Y.2d 452, 491 n.18, 749 N.Y.S.2d 766, 785 n.18 (2002) ("[T]he few objections defendant did raise were all of a general nature; his complaints are thus unpreserved."); People v. Kello, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111, 113 (2001); People v. Luperon, 85 N.Y.2d 71, 77-78, 623 N.Y.S.2d 735, 738-39 (1995); see also Corchado v. Rabideau, 576 F. Supp. 2d 433, 454 n.5 (W.D.N.Y. 2008) ("New York takes a 'stringent' approach to the contemporaneous objection rule." (quoting People v. Jones, 81 A.D.2d 22, 40, 440 N.Y.S.2d 248, 260 (2d Dep't 1981))).

Finally, the third and "most important" factor, Lee, 534 U.S. at 382, again weighs against the petitioner, as his failure to present the challenges he raises on appeal to the trial court violated "not just [] the formal requirements of [CPL] § 470.05(2)" but rather "the very substance of this rule," Garvey, 485 F.3d at

35

720. "[D]emanding compliance with [CPL] § 470.05(2) serves a legitimate governmental interest in this case, that is to say, the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." Id.

Because the Appellate Division reasonably applied New York's contemporaneous objection rule to the petitioner's case, and because its ruling is independent of the federal issue and adequate to support its judgment, I agree with the respondent that the Court cannot reach the merits of the petitioner's claim that he was deprived of his right to an impartial jury and his challenges to the above-described evidentiary rulings.

C. The Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act (the "AEDPA") governs claims that have been adjudicated on the merits by state courts. 28 U.S.C § 2254(d). An application for a writ of habeas corpus on behalf of a state prisoner "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of4 the claim" either:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Circuit court decisions "do[] not constitute 'clearly established Federal law, as determined by the Supreme Court.'" Renico v. Lett, 559 U.S. 766, 779 (2010) (quoting 28 U.S.C. § 2254(d)(1)). Thus, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or[] . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Harrington v. Richter, 562 U.S. 86, 102 (2011).

A state court decision is "contrary to" clearly established precedent when the court applies a rule that is "'diametrically different,' 'opposite in character,' or 'mutually opposed'" to the governing law set forth in Supreme Court cases. Williams v. Taylor, 529 U.S. 362, 405 (2000) (quoting "Contrary," Webster's Third New International Dictionary (1976)). By contrast, "[a] court may grant relief under the unreasonable application clause if the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 694 (2002) (quoting

37

28 U.S.C. § 2254(d)(1)).  This inquiry focuses not on whether the state court's application of clearly established federal law is merely incorrect or erroneous, but on whether it is objectively unreasonable, a substantially higher threshold.  See id. at 694.

When a habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may disturb the state court's decision "only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Burt v. Titlow, __ U.S. __, __, 134 S. Ct. 10, 15 (2013) (quoting 28 U.S.C. § 2254(d)(2)). Moreover, "the prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'" Id. at __, 134 S. Ct. at 15 (quoting 28 U.S.C. § 2254(e)(1)).  A determination of fact is not unreasonable because it is merely incorrect -- the standard is "substantially higher." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).  "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" Wood, 558 U.S. at 301 (second and third alterations in original) (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006)).  Rather, to meet this standard, a state court's factual determination "must be sufficiently against the weight of the evidence that it is objectively unreasonable."

38

Winston, 592 F.3d at 554.

###### 1.  Double Jeopardy Claim

The petitioner's argument that the state violated his Fifth Amendment protection against double jeopardy when it retried him following the New York Court of Appeals' reversal of his original conviction lacks merit.

The Double Jeopardy Clause "consist[s] of three separate constitutional protections." North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled in part on other grounds by Alabama v. Smith, 490 U.S. 794 (1989).  "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Id. (footnotes omitted).  It does not, however, prohibit retrying a defendant who has succeeded in having his conviction set aside unless "[his] conviction has been reversed because of insufficiency of the evidence." United States v. DeFrancesco, 449 U.S. 117, 131 (1980); see also Montana v. Hall, 481 U.S. 400, 402 (1987) (per curiam) ("It is a 'venerable principl[e] of double jeopardy jurisprudence' that '[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge.'" (alterations in original)

(citation omitted) (quoting <u>United States v. Scott</u>, 437 U.S. 82, 90-91 (1978))); <u>Burks v. United States</u>, 437 U.S. 1, 15 (1978) (noting that where conviction is reversed for reasons other than "evidentiary insufficiency," "society maintains a valid concern for insuring that the guilty are punished"); <u>cf.</u> <u>Bozza v. United States</u>, 330 U.S. 160, 166-67 (1947) ("The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.").

There can be no doubt that the Court of Appeals' decision regarding the petitioner's original guilty plea allowed him to withdraw that plea solely because he "did not possess the requisite information knowingly to waive his rights"; evidentiary insufficiency never factored into the court's discussion. <u>Hill II</u>, 9 N.Y.3d at 192, 849 N.Y.S.2d at 16. Accordingly, the state court correctly applied Supreme Court precedent when it summarily denied the petitioner's double jeopardy claim, <u>Hill III</u>, 121 A.D.3d at 470, 994 N.Y.S.2d at 99, which he raised in appealing his conviction to the Appellate Division and in seeking leave to appeal from the Court of Appeals (S.R. at 100-04, 280-82).

### 2. Speedy Trial Claim

Mr. Hill contends that his Sixth Amendment right to a speedy trial was violated due to the amount of time that elapsed between the Court of Appeal's decision allowing him to withdraw his guilty

plea and the start of his trial.[9]   (Pet. at 8-9).   The state court's summary dismissal of this claim is neither contrary to clearly established Supreme Court precedent nor an unreasonable determination of the facts.

The Sixth Amendment guarantees "the accused . . . the right to a speedy and public trial."  U.S. Const., amend. VI.  The Supreme Court has identified several factors courts should assess in determining whether this right has been violated: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  Barker v. Wingo, 407 U.S. 514, 530 (1972).  The balancing of these factors "necessarily compels courts to approach speedy trial cases on an ad hoc basis" and requires consideration of "the conduct of both the prosecution and the defendant."  Id.  However, before addressing the Barker factors, a court must "ascertain whether the length of the delay is 'presumptively prejudicial.'"  United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1992) (quoting Barker, 407 U.S. at 530).

The delay in this case -- from the moment the Court of Appeals

---

[9] Any claim that Mr. Hill's state statutory rights were violated by the delay is not cognizable on federal habeas review. Cadilla v. Johnson, 119 F. Supp. 2d 366, 374 (S.D.N.Y. 2000) (finding argument based on New York procedural law that "requires [] that the prosecution be ready for trial within a prescribed time frame" does not raise federal constitutional claim and collecting cases).

vacated the petitioner's guilty plea on November 15, 2007, to the commencement of the petitioner's trial on April 23, 2009 -- amounts to a little over seventeen months.  While this is sufficiently lengthy to trigger analysis of the Barker factors, Fisher v. Superintendent, No. 12 Civ. 6703, 2014 WL 128015, at *15 (S.D.N.Y. Jan. 14, 2014) ("The . . . Second Circuit has noted that there is a 'general consensus that a delay of over eight months'" triggers further analysis (quoting Vassell, 970 F.2d at 1164)), it is far less than in other cases where no speedy trial violation was found, see, e.g., Vermont v. Brillon, 556 U.S. 81, 88, 94 (2009) (three years); United States v. Loud Hawk, 474 U.S. 302, 314 ("90-month delay"); Barker, 407 U.S. at 533-34 ("well over five years"); see also United States v. Howard, 443 F. App'x 596, 599 (2d Cir. 2011) (forty-three months); United States v. Vasquez, 918 F.2d 329, 338 (2d Cir. 1990) (twenty-six months); United States v. McGrath, 622 F.2d 36, 41 (2d Cir. 1980) (twenty-four months); see also Flowers v. Warden, 853 F.2d 131, 133 (2d Cir. 1988) (collecting cases).

More significantly, turning to the second factor, the petitioner's trial counsel candidly admitted that the prosecution was responsible for, at worst, a "nominal" portion of the delay. (H. 4/23/09 at 24).  In fact, according to the record, from the time the Supreme Court denied certiorari until the trial began, defense counsel bore all responsibility for the case's inactivity.

42

(H. 4/23/09 at 22-25); see Brillon, 556 U.S. at 90-91 ("Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant." (alteration in original) (quoting Coleman, 501 U.S. at 753)).  And while the petitioner cannot be blamed for the roughly six months that elapsed between the decisions of the Court of Appeals and the United States Supreme Court, "it hardly need be said that an [] appeal by the Government ordinarily is a valid reason that justifies delay," and there is no indication here that this is an extraordinary case.  Loud Hawk, 474 U.S. at 315-16.  This factor therefore weighs heavily against the petitioner.

The third factor, "a defendant's demand for or failure to demand a speedy trial[,] tends not to influence the analysis strongly except at the extremes."  United States v. Ghailani, 751 F. Supp. 2d 515, 529 (S.D.N.Y. 2010).  Here, Mr. Hill appears to have first demanded a speedy trial shortly before his trial began, although his trial counsel admitted that Mr. Hill never consented to the repeated adjournments in his case.  (H. 4/23/09 at 25-26); cf. Barker, 407 U.S. at 529 (advising trial courts to account for situations in which "[an] attorney acquiesces in long delay without adequately informing his client").  Thus, while this is not necessarily a case where the petitioner opportunistically

43

submitted to pre-trial delay and only asserted his speedy trial
rights when it benefitted him, see United States v. Abad, 514 F.3d
271, 275 (2d Cir. 2008) (discounting assertion of speedy trial
right "when it suited [the defendant's] interests but not when the
delay benefited him"); United States v. Lane, 561 F.2d 1075, 1079
(2d Cir. 1977) (finding motions to dismiss for speedy trial
violations "filed on the eve of scheduled trials [] are indicative
of an interest in having the indictment dismissed, rather than of
an interest in expediting the proceedings), there is no indication
that the state "ignored" the petitioner despite his "repeatedly
and energetically assert[ing] his rights," United States v. Vispi,
545 F.2d 328, 334 (2d Cir. 1976).  Moreover, in the absence of any
evidence that either the prosecution or the trial court had reason
to know, prior to receiving the petitioner's pro se motions, that
he objected to the delay in his case, I cannot say that the state
violated its duty to promptly try the petitioner.  See Barker, 407
U.S. at 529-30 (noting that when "delay is attributable to the
defendant" speedy trial rights may be waived and that courts must
weigh "the conduct of both the prosecution and the defendant");
cf. New York v. Hill, 528 U.S. 110, 115 (2000) (finding
"[s]cheduling matters [] plainly among those for which agreement
by counsel generally controls" and that "[r]equiring express
assent from the defendant himself for such routine and often

44

repetitive scheduling determinations would consume time to no apparent purpose"). From the petitioner's perspective, this factor is, at best, neutral.

The most serious consideration in weighing the final <u>Barker</u> factor, "prejudice to the defendant," is whether the delay impaired the accused's defense. <u>Barker</u>, 407 U.S. at 532. Although the petitioner argues that he was "unable to gather evidence and otherwise prepare [his] defense," he does not explain how the alleged delay caused this prejudice; to the contrary, he seems to suggest that his defense would have benefited from more time to prepare. (Reply at 22-24); <u>Ghailani</u>, 751 F. Supp. 2d at 531 ("[R]elief is appropriate only if there is a causal relationship between . . . the particular alleged prejudice and the delay in question."). The other considerations relevant to the issue of prejudice, "oppressive pretrial incarceration" and "anxiety and concern of the accused," <u>Barker</u>, 407 U.S. at 532, do not meaningfully impact the analysis in this case, <u>Brown v. Perez</u>, No. 13 Civ. 4615, 2013 WL 5913306, at *15 (S.D.N.Y. Oct. 31, 2013) (finding "nineteen month period of pre-trial incarceration [] not sufficiently serious to trigger a constitutional violation" and collecting cases).

Having weighed all of the <u>Barker</u> factors, and particularly in light of the role of petitioner's attorney in causing the delay

45

and the lack of prejudice, I find that the Appellate Division's summary rejection of the petitioner's speedy trial claim was proper and recommend that this claim be denied.

### 3. Due Process Claim

The fourth claim in the petition argues that the petitioner's constitutional rights were violated when his case was remanded for trial following the Court of Appeals decision vacating his guilty plea. (Pet. at 9). To the extent this claim is not duplicative of the double jeopardy and speedy trial claims, it appears to be based on the premise that his re-trial violated the Due Process Clause of the Fourteenth Amendment. There is no support for this position and the claim should be dismissed.

First, the petitioner's assertion that "the Court of Appeals order[ed] [his] release" (Pet. at 9) is false; the court ordered "the case remitted to Supreme Court [New York County] for further proceedings on the indictment." Hill II, 9 N.Y.3d at 193, 849 N.Y.S.2d at 16. Moreover, "[a]t bottom, the petitioner's due-process claim is nothing more than his double-jeopardy claim in different clothing," and the Supreme Court has declined "to hold that the Due Process Clause provides greater double-jeopardy protection than does the Double Jeopardy Clause." Sattazahn v. Pennsylvania, 537 U.S. 101, 116 (2003).

4.  <u>Ineffective Assistance of Counsel</u>[10]

The petitioner's ineffective assistance of counsel claims can be disposed of in short order.  Having already determined that the petitioner's double jeopardy claim lacks any merit, it follows necessarily that the failure of trial and appellate counsel to raise that claim cannot be deemed an "omission[] outside the wide range of professionally competent assistance."  <u>See</u> <u>Strickland</u>, 466 U.S. at 690; <u>Johnson v. United States</u>, 779 F.3d 125, 130 (2d Cir. 2015) (holding that failure to advance meritless arguments is not objectively unreasonable); <u>United States v. Kirsh</u>, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance.").  The same holds true for the petitioner's claim that appellate counsel was ineffective for failing to argue the speedy trial issue.

The petitioner's argument that appellate counsel was ineffective for not appealing the trial court's ruling on the suppression motion fares no better, as he cannot satisfy either

---

[10] A claim of ineffective assistance of appellate counsel is assessed under the <u>Strickland</u> test; that is, the petitioner must show "first, that his attorney's performance 'fell below an objective standard of reasonableness, and, second, that there was prejudice, meaning a 'reasonable probability' that, but for counsel's error, the outcome would have been different."  <u>Lynch</u> <u>v. Dolce</u>, 789 F.3d 303, 311 (2d Cir. 2015) (citations omitted) (quoting <u>Strickland</u>, 466 U.S. at 688, 694).

prong of the Strickland test.  Appellate counsel "does not have a duty to advance every nonfrivolous argument that could be made"; at a minimum, the petitioner must show that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  Regardless of the strength of the six arguments appellate counsel did raise, it is clear that the trial court's ruling on the suppression motion does not amount to a "significant" issue.  Putting to one side the flimsy factual basis offered in support of the petitioner's motion to suppress, the untimeliness of the motion (and the absence of any explanation for not pressing the claim sooner) makes appellate counsel's omission reasonable.  See Chappero v. West, No. 04 Civ. 8018, 2009 WL 2058534, at *18 (S.D.N.Y. July 15, 2009) (collecting New York cases affirming denials of motions on timeliness grounds).  Moreover, given the weakness of an appeal of the suppression motion ruling, the petitioner cannot establish that counsel's failure to raise the claim prejudiced the outcome of his appeal.

Although unexhausted, the petitioner's claims that appellate counsel was ineffective should be dismissed, as they lack merit. Moreover, the petitioner's exhausted claim that trial counsel was ineffective for not raising the double jeopardy defense should be denied.

Conclusion

For these reasons, I recommend denying Mr. Hill's petition for a writ of habeas corpus.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Analisa Torres, Room 2210, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 11, 2016

Copies mailed this date to:

Anthony Hill
02-A-3721
Great Meadow Correctional Facility
P.O. Box 51
Comstock, NY 12821

Lisa E. Fleischman, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271-0332

49